No. 22-15645

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROGER PALMER, ET AL.,

*Plaintiffs - Appellants,*

v.

JOSEPH M. LOMBARDO, ET AL.,

*Defendants - Appellees,*

On Appeal from the United States District Court
for the District of Nevada
No. 3:21-cv-00268-MMD-CSD
Hon. Miranda M. Du

## ANSWERING BRIEF

AARON D. FORD (Bar No. 7704)
Attorney General
KIEL B. IRELAND (Bar No. 15368)
Deputy Solicitor General
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, NV 89701
(775) 684-1234 (phone)
(775) 684-1108 (fax)
kireland@ag.nv.gov

*Attorneys for Defendants-Appellees*
*Joseph M. Lombardo, et al.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................... iii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES.................................................................1

PERTINENT AUTHORITIES ...................................................................1

INTRODUCTION ....................................................................................1

STATEMENT OF THE CASE....................................................................3

    I.     Legal background.........................................................................3

          A.    Federal law requires background checks for most firearm sales ...............................................................................3

          B.    Ghost-gun kits circumvent the background-check system ........5

          C.    The Legislature passed AB 286 to respond to the threat posed by ghost guns and kits .....................................................7

    II.    Procedural background.........................................................9

          A.    Plaintiffs' allegations .................................................9

          B.    The district court's order dismissing the complaint ...................9

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ....................................................................................13

    I.    Standard of Review .........................................................13

    II.    AB 286 does not violate the Second Amendment .............................13

          A.    *Bruen* confirms the constitutionality of regulations like AB 286 under the Second Amendment's plain text .................13

B. In the Alternative, This Court May Remand This Case so that the Parties Can Develop the Historical Record in the District Court .......................................................................19

III. Plaintiffs Cannot State a Takings Claim ...............................................25

A. S
Asserting a Takings Claim Against the State ...........................25

B. Plaintiffs Failed to Plead a Per Se Takings Claims ..................26

C. Any Potential *Penn Central* Argument Was Forfeited and Meritless .......................................................................28

D. The State's regulation of dangerous personal property was not a taking .......................................................................30

CONCLUSION ...............................................................................31

STATEMENT OF RELATED CASES ...........................................32

CERTIFICATE OF COMPLIANCE ..............................................33

STATUTORY ADDENDUM – TABLE OF CONTENTS ..................34

STATUTORY ADDENDUM ...........................................................35

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Abramski v. United States*,
573 U.S. 169 (2014) ...........................................................3

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985) .........................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................13

*Azul-Pacifico, Inc. v. City of Los Angeles*,
973 F.2d 704 (9th Cir. 1992)............................................25

*Bridge Aina Le'a, LLC v. Haw*,
950 F.3d 610 (9th Cir. 2020)............................................29

*Cardenas v. United States*,
826 F.3d 1164 (9th Cir. 2016)..................................... 26, 28

*CDK Global LLC v. Brnovich*,
16 F.4th 1266 (9th Cir. 2021)...........................................29

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) .....................................................26

*City of Salinas v. New Harvest Christian Fellowship*,
No. 22-309 (Sept. 30, 2022) .............................................22

*Codrea v. Garland*,
No. 21-1707 (Fed. Cir. filed Mar. 2, 2021).......................30

*Colony Cove Props., LLC v. City of Carson*,
888 F.3d 445 (9th Cir. 2018)..................................... 28, 29

*Defense Distributed v. Bonta*,
No. CV 22-6200, 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022)
(unpublished) ...................................................................15

*DeHoog v. Anheuser-Busch InBev SA/NV*,
  899 F.3d 758 (9th Cir. 2018) ...............................................................28

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................13

*Doe v. Regents of the Univ.*,
  891 F.3d 1147 (9th Cir. 2018) .............................................................26

*Firearms Fed'n, Inc. v. Brown*,
  __ F. Supp. 3d __, No. 2:22-cv-1815, 2022 WL 17454829
  (D. Or. Dec. 6, 2022), *appeal pending*, No. 22-36011
  (9th Cir. filed Dec. 7, 2022) ................................................... 14, 15, 21

*Frein v. Pennsylvania State Police*,
  47 F.4th 247 (3d Cir. 2022) .................................................................22

*Fritz v. Washoe County*,
  376 P.3d 794 (Nev. 2016)....................................................................25

*Golden Gate Hotel Ass'n v. City & County of San Francisco*,
  18 F.3d 1482 (9th Cir. 1994) ...............................................................25

*Golden Nugget, Inc. v. Am. Stock Exch., Inc.*,
  828 F.2d 586 (9th Cir. 1987) (per curiam) ..........................................15

*Guedes v. ATF*,
  520 F. Supp. 3d 51 (D.D.C. 2021) (collecting cases) ................... 30, 31

*Hamilton v. Ky. Distilleries & Warehouse Co.*,
  251 U.S. 146 (1919) ..................................................... 27, 30, 31

*Horne v. Dep't of Agric.*,
  576 U.S. 350 (2015) ............................................................................27

*Knick v. Township of Scott*,
  139 S. Ct. 2162 (2019) ........................................................................25

# TABLE OF AUTHORITIES, cont'd.

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ...........................................................25

*Lucas v. South Carolina Coastal Council*,
  505 U.S. 1003 (1992) .................................................. 10, 27

*Lucas. Bridge Aina Leʻa, LLC v. Land Use Comm'n*,
  950 F.3d 610 (9th Cir. 2020) ...........................................28

*Martinez v. Villanueva*,
  No. 20-56233, 2022 WL 2452308 (9th Cir. July 6, 2022) (unpublished)............20

*McDougall v. County of Ventura*,
  38 F.4th 1162 (9th Cir. 2022)...........................................20

*Md. Shall Issue, Inc. v. Hogan*,
  963 F.3d 356 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021) ....................27

*Miller v. Bonta*,
  No. 21-55608, 2022 WL 3095986 (9th Cir. Aug. 1, 2022) (unpublished) ..........20

*Morehouse Enters., LLC v. ATF*,
  No. 3:22-cv-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022)
  (unpublished), *appeal pending sub nom. Arizona v. ATF*, No. 22-2854
  (8th Cir. filed Aug. 31, 2022) ...........................................6

*Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*,
  __ F. Supp. 3d __, No. 22-cv-501, 2022 WL 3083715
  (N.D. Cal. Aug. 3, 2022) ............................................. 14, 15

*Nat'l Rifle Ass'n of Am., Inc. v. ATF*,
  700 F.3d 185 (5th Cir. 2012)...........................................23

*New Harvest Christian Fellowship v. City of Salinas*,
  29 F.4th 596 (9th Cir. 2022)...........................................22

*New York State Rifle & Pistol Ass'n v. Bruen*,
142 S. Ct. 2111 (2022) .................. 2, 11, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24

*Oakland Tactical Supply, LLC v. Howell Township*,
No. 21-1244, 2022 WL 3137711 (6th Cir. Aug. 5, 2022) (unpublished) ............14

*One World One Family Now v. City & County. of Honolulu*,
76 F.3d 1009 (9th Cir. 1996) ................................................................................22

*Penn Central Transportation Co. v. City of New York*,
438 U.S. 104 (1978) ......................................................................... 10, 28, 29, 30

*Rancho de Calistoga v. City of Calistoga*,
800 F.3d 1083 (9th Cir. 2015)...............................................................................29

*Range v. Attorney General U.S.*,
53 F.4th 262 (3d Cir. 2022) (per curiam) ..................................................... 15, 23

*Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119
(9th Cir. Nov. 17, 2022) (unpublished) ......................................................... 19, 20

*Rigby v. Jennings*,
__ F. Supp. 3d. __, 2022 WL 4448220 (D. Del. Sept. 23, 2022).........................18

*Rupp v. Bonta*,
No. 19-56004, 2022 WL 2382319 (9th Cir. June 28, 2022) (unpublished).........20

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012)...............................................................................13

*Sweet v. Rechel*,
159 U.S. 380 (1895) ..............................................................................................30

*Teixeira v. County of Alameda*,
873 F.3d 670 (9th Cir. 2017) (en banc).................................................................21

*United States v. Focia*,
869 F.3d 1269 (11th Cir. 2017) ...............................................................3

*VanDerStok v. Garland*,
__ F. Supp. 3d __, No. 4:22-cv-691, 2022 WL 4809376
(N.D. Tex. Oct. 1, 2022), *appeal pending*, No. 22-11071
(5th Cir. filed Nov. 3, 2022) ....................................................................6

*White v. Ill. State Police*,
15 F.4th 801 (7th Cir. 2021) ..................................................................16

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .................................................................................26

*Young v. Hawaii*,
45 F.4th 1087 (9th Cir. 2022) (en banc) ......................................... 16, 21

**<u>Statutes</u>**

18 U.S.C. § 921(a)(3) ................................................................................4

18 U.S.C. § 922(b)(1) ...................................................................... 3, 5, 23

18 U.S.C. § 923(i) .....................................................................................3

42 U.S.C. § 1983 .....................................................................................25

Nev. Rev. Stat. § 202.253(9) ................................................................5, 7

Nev. Rev. Stat. § 202.360(1) ............................................................. 3, 23

Nev. Rev. Stat. § 202.3625 ................................................................ 7, 24

Nev. Rev. Stat. § 202.363(1) ........................................................ 8, 19, 24

Nev. Rev. Stat. § 202.3635(1) ................................................................19

Nev. Rev. Stat. § 202.364(1)..................................................................... 8, 24

Nev. Rev. Stat. § 202.3645 ..................................................................... 7, 8, 27

Nev. Rev. Stat. § 202.3657(3)....................................................................16

Nev. Rev. Stat. § 3635 .................................................................................8

**Rules**

27 C.F.R. § 478.12(a)...................................................................................4

27 CFR parts 447 .........................................................................................4

87 Fed. Reg. 24,652 (Apr. 26, 2022),
Definition of "Frame or Receiver" and Identification of Firearms......... 4, 5, 6, 24

**OTHER AUTHORITY**

Assembly Bill 286........................................................................... passim

FBI, *NICS Firearm Checks: Year by State/Type* 2–3 (2022),
https://bit.ly/3z3Ev6T ............................................................................26

*Firearms Verification*, ATF,
https://bit.ly/2UJeryz (last visited December 30, 2022)......................................13

H.R. Rep. No. 116 (2019) ................................................................. 14, 32

*Hearing on AB 286 Before the Senate Committee on Judiciary on May 11, 2021*,
81st Sess., at 6 (Nev. 2021),
https://bit.ly/3Q1PgQl ..........................................................................13

*Judiciary Committee Minutes* ............................................ 15, 17, 24, 31

**TABLE OF AUTHORITIES, cont'd.**

Page

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early
American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004)...................31

Sawyer, Charles Winthrop, *Firearms in American History,* 145–47 (1910) .........32

Senate Committee on the Judiciary,
*AB 286 Work Session Document* 8 (2021),
https://bit.ly/3Cn0nxA .........................................................................................16

U.S. Const. amend. II .............................................................................................26

Defendants-Appellees Joseph M. Lombardo, Aaron D. Ford, George Togliatti and Erica Sousa (collectively, the "State") file this answering brief pursuant to Federal Rule of Appellate Procedure 28.[1]

## JURISDICTIONAL STATEMENT

The State agrees with Plaintiffs' jurisdictional statement.

## STATEMENT OF THE ISSUES

1. Does a Nevada statute banning ghost guns and ghost-gun kits violate the Second Amendment?

2. Did the district court err in dismissing Plaintiffs' takings claim for equitable relief?

## PERTINENT AUTHORITIES

The State is including an addendum with additional relevant provisions following this brief.

## INTRODUCTION

Until the Nevada Legislature enacted Assembly Bill 286, any individual in Nevada could go online and buy a kit that would allow him to assemble a functioning pistol or rifle in under an hour. The kit would be sold without a background check,

---

[1] Governor Stephen Sisolak and Administrator Mindy McKay were originally named as Defendants in their official capacity. ER-236–37. Since then, Lombardo has been sworn in as governor and Sousa has taken over McKay's position. Under Federal Rule of Appellate Procedure 43(c)(2), the current public officers are automatically substituted as Defendants-Appellees.

so there was nothing stopping minors, felons and other prohibited persons from buying it. And the resulting weapon would have no serial number, making it virtually untraceable if used in a crime. Because they are impossible to monitor at the point of sale and virtually impossible trace afterwards, these weapons are called "ghost guns."

The federal government and the Nevada Legislature have recognized that ghost guns present an increasing threat to public safety. These guns have been used in mass shootings and attacks on law enforcement, and each year more and more ghost guns are found on the street. Nothing about ghost guns make them better for self-defense and other lawful purposes; their two meaningful advantages over traditional firearms is their availability to prohibited persons and their usefulness in committing crimes. Responding to this growing threat, the Legislature passed AB 286, which bans the possession and sale of ghost guns and ghost-gun kits.

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), specifically approved of prophylactic regulations that "ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* at 2138 n.9 (quotation marks omitted). AB 286 is one such prophylactic regulation. Because of that, and because Plaintiffs' takings claim is meritless, the district court's dismissal of Plaintiffs' complaint was correct. This Court should affirm. If this Court

chooses not to affirm, it should remand back to the district court so that the State can continue developing the historical record supporting AB 286.

## STATEMENT OF THE CASE

### I. Legal background

#### A. Federal law requires background checks for most firearm sales

Federal law has regulated firearm sales for decades "to prevent guns from falling into the wrong hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014). The "wrong hands" are certain classes of prohibited persons, like minors, felons and those convicted of domestic violence offenses. 18 U.S.C. § 922(b)(1), (d), (g); *see also* Nev. Rev. Stat. § 202.360(1) (Nevada-law analog). To help ensure that a potential firearm buyer is not a prohibited person, federal law generally mandates a background check before the sale. *Abramski*, 573 U.S. at 172–73. And it also imposes recordkeeping requirements on the seller. *Id.* at 173.

Regulating the point of sale does not just stop prohibited persons from obtaining guns, it also helps law enforcement investigate gun crimes. *Abramski*, 573 U.S. at 173. Each firearm built by a licensed manufacturer contains a unique serial number. 18 U.S.C. § 923(i). If it is used in a crime, law enforcement can use the serial number to trace it back to the original buyer, and from there, onto the potential criminal. *See, e.g.*, *United States v. Focia*, 869 F.3d 1269, 1275–76 (11th Cir. 2017) (describing the successful investigation of a black-market gun reseller by tracing the

guns to their original buyers). Point of sale records likewise help law enforcement track down straw buyers (who buy guns on behalf of a prohibited persons) and firearms traffickers. Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,660 (Apr. 26, 2022) (codified at 27 CFR parts 447–49).

Not every gun component is considered a "firearm" requiring a background check and serial number. *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at 24,654. Federal law defines a gun's "frame or receiver" as a firearm subject to regulation. *Id.* (citing 18 U.S.C. § 921(a)(3)). The "[f]rame or receiver" – which the rest of this brief will refer to simply as the "receiver" – holds the hammer, striker, bolt or other mechanism that "energize[s]" the firing sequence or blocks or seals the breech before the start of the firing sequence. 27 C.F.R. § 478.12(a)(1)–(2). It also generally receives the other essential components that make up a functioning gun. *See id.* § 478.12(a)(4). The graphic below shows receivers in three types of guns:



*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited December 30, 2022).

Because receivers are considered "firearms," they cannot be sold without a

background check (with exceptions not relevant here). *See* 18 U.S.C. § 922(t).

### B.    Ghost-gun kits circumvent the background-check system

Recent technological advances have made it easier for companies to build and

sell ghost-gun kits. Definition of "Frame or Receiver" and Identification of Firearms,

87 Fed. Reg. at 24,655. These kits include an "unfinished" receiver that needs some

work before it can be used in a working gun. Nev. Rev. Stat. § 202.253(9); *see*

Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at

24,655–56. Using home tools, the buyer can finish the receiver and assemble a

functional gun in "20 to 40 minutes." *Hearing on AB 286 Before the Senate*

*Committee on Judiciary on May 11, 2021*, 81st Sess., at 6 (Nev. 2021),

https://bit.ly/3Q1PgQl [hereinafter *Judiciary Committee Minutes*].

As discussed above, a finished receiver is a firearm under federal law. But

unfinished receivers below a certain threshold of completion – commonly described

as 80% complete – have not been classified as firearms. Definition of "Frame or

Receiver" and Identification of Firearms, 87 Fed. Reg. at 24,663 & n.47. Ghost-gun

kits are typically calibrated so that the receiver is less complete than that legal

threshold so that they can be sold without a background check. *Id.* at 24,663. And

the gun assembled from the kit will lack a serial number. H.R. Rep. No. 116-88, at 2 (2019).[2]

The federal government has recognized the unique threat posed by ghost guns and, by extension, ghost-gun kits. The U.S. House Committee on Homeland Security concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2. They "enabl[e] prohibited buyers to purchase deadly weapons with just a few clicks online." *Id.* And they "hamstring[ ] law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.*

The U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives similarly identified ghost guns as an increasing threat to public safety. *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at 24,656–58. Over a six-year period surveyed, "there were approximately 45,240 suspected [ghost guns] reported to ATF as having been recovered by law enforcement from potential

---

[2] After the Legislature passed AB 286, the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives promulgated a regulation that expands the definition of "firearm" to some unfinished receivers (called by the ATF "partially complete" receivers) and ghost-gun kits (called "weapon parts kit[s]"). Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at 24,670. Several sets of plaintiffs have challenged the ATF rule. *See, e.g.*, *VanDerStok v. Garland*, __ F. Supp. 3d __, No. 4:22-cv-691, 2022 WL 4809376 (N.D. Tex. Oct. 1, 2022), *appeal pending*, No. 22-11071 (5th Cir. filed Nov. 3, 2022); *Morehouse Enters., LLC v. ATF*, No. 3:22-cv-116, 2022 WL 3597299 (D.N.D. Aug. 23, 2022) (unpublished), *appeal pending sub nom. Arizona v. ATF*, No. 22-2854 (8th Cir. filed Aug. 31, 2022). And it is not yet clear how the companies that sell ghost-gun kits will adjust their products or procedures under the new rule. Given that uncertainty, this brief focuses on the state of the law when AB 286 was enacted.

crime scenes, including 692 homicides or attempted homicides." *Id.* at 24,656. The number of ghost guns recovered increased each year of the survey, starting from a low of 1,758 in 2016 to a high (so far) of 19,344 in 2021. *Id.*

### C. The Legislature passed AB 286 to respond to the threat posed by ghost guns and kits

In considering AB 286, the Legislature came to the same conclusion as the federal government about ghost guns' threat to public safety. The bill's sponsor explained that "[g]host guns are growing in popularity because they circumvent background checks and are untraceable." *Judiciary Committee Minutes*, *supra*, at 3. An expert testified to ghost guns' "explosive rise" in popularity. *Id.* (comma omitted). Another expert testified that ghost guns had been used in mass shootings and in a deadly ambush on law-enforcement officers. *Id.* at 7–8.

The Legislature heard testimony that Nevada suffered an acute problem with ghost guns because one of the largest ghost-gun sellers – Polymer80, Inc. – is based in the State. *Judiciary Committee Minutes*, *supra*, at 3, 8. Polymer80 sold a "Buy, Build, Shoot" kit that could produce a functional gun in 20 to 40 minutes with a "Dremel tool or a regular drill." *Id.* at 6.

After that testimony, the Legislature enacted AB 286, which is now codified at chapter 202 of the Nevada Revised Statutes. Nev. Rev. Stat. §§ 202.253(9), 202.3625–202.3645. Section 253(9) defines the statutory term "[u]nfinished frame or receiver," distinguishing ghost-gun precursors from innocent materials.

Section 363 makes it illegal to "possess, purchase, transport or receive an unfinished frame or receiver unless" you are a licensed firearm importer or manufacturer, or the unfinished frame or receiver has a serial number compliant with federal law. *Id.* § 202.363(1)(a).

AB 286 also bans unserialized firearms, no matter their provenance. Section 3635 makes it illegal to "manufacture or cause to be manufactured or assemble or cause to be assembled a firearm that is not imprinted with a serial number issued by a firearms importer or manufacturer in accordance with federal law," unless the firearm is permanently inoperable or is an antique or collector's item, curio, or relic. Nev. Rev. Stat. § 202.3635(1). And section 364 similarly makes it illegal to possess, transfer, transport or receive an unserialized firearm. *Id.* § 202.364(1). Section 364 has several exceptions to the ban on unserialized firearms, including for law-enforcement and for firearms made before 1969 (when federal law began mandating serialization). *Id.*

AB 286 provided a grace period of about six months before most of its provisions became effective. Nev. Rev. Stat. § 202.3645. The grace period's purpose was to allow those who possessed unfinished receivers or ghost guns time to sell them or move them out of the State. Senate Committee on the Judiciary, *AB 286 Work Session Document* 8 (2021), https://bit.ly/3Cn0nxA.

## II.    Procedural background

### A.    Plaintiffs' allegations

Plaintiffs – two individuals and an advocacy group – filed a complaint in district court challenging AB 286. ER-232–33. The complaint alleges that, before AB 286's passage, Plaintiff Chad Moxley would attend two gun shows per month, where he would sell "between five and forty" ghost-gun kits. *Id.* at 254. Those dozens of monthly sales would not have required background checks. *See Judiciary Committee Minutes*, *supra*, at 3. Plaintiff Roger Palmer does not sell ghost-gun kits, but he alleges he owns "multiple unserialized firearms." ER-251, 253.

The complaint named as Defendants Nevada's governor and attorney general, as well as two Nevada Department of Public Safety officers. ER-236–37. All Defendants were "sued in [their] official capacity." *Id.*[3]

The complaint contended that AB 286 violates the Second Amendment and the Takings Clause. ER-263–64, 267. The prayer for relief asked for declarative and injunctive relief, but not damages or just compensation. *Id.* at 267–69.

### B.    The district court's order dismissing the complaint

The State moved to dismiss, arguing that the complaint's allegations did not make out a Second Amendment or takings claim. ER-20. Applying the then-

---

[3] The complaint also named as Defendants some local officials. OB 2 n.1. Plaintiffs voluntarily dismissed those officials from the case, and they are not parties to this appeal. *Id.*

governing test, the district court concluded that AB 286 was consistent with the Second Amendment because it passed intermediate scrutiny. *Id.* at 20–21, 27. The district court explained that the federal government and the Legislature had both recognized the increasing public-safety threat posed by ghost guns. *Id.* at 24–25. And it found that AB 286 reasonably addressed that threat by "focus[ing] only on unserialized firearms that (1) are not within a categorical exception [e.g. pre-1969 firearms], (2) bypass background checks" and "(3) are untraceable without a serial number." *Id.* at 26.

The district court concluded that the complaint failed to state a takings claim. While the complaint alleged that the economic impact of AB 286 was "substantial," the district court found that that was not enough to sustain a claim that "all economically beneficial or productive use of" ghost guns had been eliminated by the law, as required to sustain a claim under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). ER-29, 31. Moreover, *Lucas* takings have been recognized only when the government has interfered with *real* property, not personal property like ghost guns. *Id.* at 31.

The district court found that Plaintiffs had forfeited any argument that AB 286 was a "physical taking" by not opposing the motion to dismiss on that ground. ER-27 n.10. Plaintiffs had likewise forfeited any argument based on *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978) – they "fail[ed] to

10

argue the *Penn Central* complex factors test weigh[ed] in their favor." *Id.* at 29. They also did not sufficiently plead "the extent or certainty of [AB 286's] economic impact on [them]." *Id.*

Even if Plaintiffs had alleged a cognizable taking, the district court concluded that the Takings Clause did not require compensation because "AB 286 [was] an appropriate exercise of the government's police power." ER-29. The Legislature had "adequately demonstrated that unserialized firearms and component parts are properly considered 'dangerous private property.'" *Id.* at 30. Accordingly, no compensation was due for their regulation. *Id.* at 29–30.

Lastly, the district court denied leave to amend the complaint. ER-31–32. Plaintiffs had asked for leave to amend in their brief opposing dismissal but had failed to "explain how their [c]omplaint [could] be cured by amendment." *Id.* at 31. The district court further concluded that the complaint's defects were uncurable. *Id.* at 32.[4]

## SUMMARY OF ARGUMENT

This Court should affirm the judgment below based on *Bruen*. Laws that don't regulate conduct covered by the Second Amendment's plain text are constitutional. And *Bruen* confirmed that prophylactic rules, like AB 286, that help ensure that only

---

[4] The district court denied Plaintiffs' motion for a preliminary injunction before it granted the State's motion to dismiss. ER-81. Plaintiffs don't challenge the preliminary injunction ruling on appeal. *See* OB 3–4.

law-abiding, responsible citizens keep and bear arms within the jurisdiction are outside the Second Amendment's plain text. Plaintiffs ignore *Bruen*'s discussion of prophylactic rules and instead focus on a purported right to self-manufacture firearms. But self-manufacturing firearms has no basis in the Second Amendment's plain text and is not necessary to the exercise of the right to keep and bear arms in Nevada, where professionally made, serialized firearms are abundantly available.

If this Court does not wish to affirm based on the Second Amendment's plain text, it should remand so that the parties can develop the historical record in the district court. This appeal arrives after an order granting a motion to dismiss, so the State has not had the opportunity to present its historical evidence, marshal expert testimony or interrogate the complaint's alleged historical evidence. If the case is remanded, the State will develop evidence showing analogous laws from the founding era that kept track of the firearms in the community and the individuals who possessed them, as well as laws ensuring that only law-abiding responsible citizens had firearms.

However this Court determines the Second Amendment issues, it should not disturb the district court's dismissal of Plaintiffs' takings claim. Binding caselaw forecloses their attempt to assert a takings claim against State officers sued in their official capacity. Even if that were not the case, Plaintiffs have failed to plead a cognizable taking, warranting dismissal of their claim.

# ARGUMENT

## I. Standard of Review

This Court reviews de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). Dismissal is proper if the factual allegations, which are assumed to be true, do not state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint's legal contentions and conclusory allegations are not entitled to the presumption of truth. *Id.* The district court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Skilstaf*, 669 F.3d at 1016 n.9.

## II. AB 286 does not violate the Second Amendment.

### A. *Bruen* confirms the constitutionality of regulations like AB 286 under the Second Amendment's plain text.

1. The Second Amendment "allows a 'variety' of gun regulations." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2162 (2022) (Kavanaugh, J., concurring) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008)). The *Bruen* Court itself recognized this, explaining that the "right secured by the Second Amendment is not unlimited." *Id.* at 2128 (majority opinion). *Bruen* then set out a new two-step framework to determine a regulation's constitutionality, requiring courts to review the Second Amendment's plain text and then (if necessary) the

historical record.[5] *Id.* at 2129–30; *Oakland Tactical Supply, LLC v. Howell Township*, No. 21-1244, 2022 WL 3137711, at \*2 (6th Cir. Aug. 5, 2022) (unpublished).

Under the *Bruen* test, courts must first determine if the Second Amendment's plain text applies to the conduct regulated by the challenged law. 142 S. Ct. at 2129–30. If it doesn't, the law is constitutional.[6] *Or. Firearms Fed'n, Inc. v. Brown*, __ F. Supp. 3d __, No. 2:22-cv-1815, 2022 WL 17454829, at \*8 (D. Or. Dec. 6, 2022), *appeal pending*, No. 22-36011 (9th Cir. filed Dec. 7, 2022). If it does, the burden shifts to the government to show that the regulation "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130; *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, __ F. Supp. 3d __, No. 22-cv-501, 2022 WL 3083715, at \*8 (N.D. Cal. Aug. 3, 2022).

The State will explain below that, as a matter of law, the Second Amendment's plain text does not apply to the conduct regulated by AB 286. That conclusion accords with the consensus in this Circuit's district courts that a law can be found to be constitutional at the "plain text" stage without a fact inquiry into the

---

[5] The State agrees that *Bruen* disapproved this Court's prior test for assessing the constitutionality of gun regulations, which involved means-ends scrutiny. 142 S. Ct. at 2127 & n.4.

[6] Plaintiffs do not dispute that the first step is determining whether the conduct regulated by the challenged law is covered by the Second Amendment's plain text. *See* OB 32.

historical evidence.[7] Plaintiffs also appear to agree that no historical evidence is necessary at the "plain text" stage. *See id.* at 32–34 (citing zero historical evidence in arguing that the Second Amendment's plain text covers AB 286).

No review of the historical record is necessary to decide the pure question of law presented here. This Court is reviewing an order granting a motion to dismiss, so the only relevant "facts" are the complaint's allegations and public records amenable to judicial review. *See Golden Nugget, Inc. v. Am. Stock Exch., Inc.*, 828 F.2d 586, 590 (9th Cir. 1987) (per curiam). This Court and other courts have affirmed on an alternative ground in similar situations. *E.g.*, *id.* at 587, 590; *Range v. Attorney General U.S.*, 53 F.4th 262, 266, 268 n.5 (3d Cir. 2022) (per curiam) (affirming a pre-*Bruen* district-court judgment because the challenged law was constitutional under *Bruen*).

2.     This Court should affirm even though the district court applied the pre-*Bruen* test. Plaintiffs' Second Amendment claim fails *Bruen*'s "plain text" step. The Second Amendment's text limits its protections to "the people." *Range*, 53 F.4th at 271; *see Bruen*, 142 S. Ct. at 2134. And only "law-abiding citizens" are part of "the people" who may assert Second Amendment rights. *Range*, 53 F.4th at 271, 284;

---

[7] *See, e.g., Brown*, 2022 WL 17454829, at *9-11; *Nat'l Ass'n for Gun Rights*, 2022 WL 3083715, at *8–10; *Defense Distributed v. Bonta*, No. CV 22-6200, 2022 WL 15524983, at *1 (C.D. Cal. Oct. 24, 2022) (unpublished).

*Young v. Hawaii*, 45 F.4th 1087, 1092–93 (9th Cir. 2022) (en banc) (O'Scannlain, J., dissenting); *see Bruen*, 142 S. Ct. at 2134.

*Bruen* expressly approved prophylactic measures that "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." 142 S. Ct. at 2138 n.9 (quotation marks omitted). For that reason, *Bruen* concluded that "shall-issue" concealed-carry license regimes, which "require applicants to undergo a background check or pass a firearms safety course," are constitutional without the need to review the historical record. *Id.*[8]

AB 286 is precisely the kind of prophylactic measure that *Bruen* confirmed is consistent with the Second Amendment. It is designed to prevent the circumvention of background checks so that only law-abiding, responsible citizens keep and bear arms. ER-25–26; *Judiciary Committee Minutes*, *supra*, at 3. There is therefore no need to reach the "historical tradition" step or for the State to put forward evidence of analogous historical laws. *See Bruen*, 142 S. Ct. at 2138 n.9.

3.    Plaintiffs do not grapple with *Bruen*'s approval of prophylactic measures that ensure that only "the people" keep and bear arms. *See* OB 32–34 (confirming that the Second Amendment protects the "right of *law-abiding,*

---

[8] A "shall-issue" regime requires the state to issue a concealed-carry permit as long as the applicant meets the statutory criteria. *White v. Ill. State Police*, 15 F.4th 801, 805 (7th Cir. 2021), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *see, e.g.*, Nev. Rev. Stat. § 202.3657(3).

*responsible citizens* to use arms in defense of hearth and home" (emphasis added)).

Instead, the opening brief focuses on whether ghost guns are "bearable arms" and whether there is a right to "self-manufacture arms." OB 33–34. But while it is *necessary* for Plaintiffs to succeed on those arguments to advance past the "plain text" step, it is not *sufficient*. Everyone would agree that shall-issue regimes apply to "bearable arms." Yet *Bruen* approved shall-issue regimes because they – like AB 286 – are prophylactic measures consistent with the Second Amendment's limitation of its scope to "the people." 142 S. Ct. at 2138 n.9.

Plaintiffs may argue that they *personally* are law-abiding citizens, so they are among "the people" protected by the Second Amendment's plain text. That kind of argument cannot be squared with *Bruen*'s treatment of prophylactic measures like shall-issue regimes. There is little doubt that many citizens subject to shall-issue regimes are law abiding. Yet shall-issue regimes are not within the scope of the Second Amendment's text because the constitutionality of prophylactic measures does not turn on the identity of an individual plaintiff. *See Bruen*, 142 S. Ct. at 2138 n.9. Prophylactic measures must, by definition, burden law-abiding citizens at some point in order to distinguish those who are entitled to keep and bear arms from those who are not.

Plaintiffs' argument that they have a right to self-manufacture firearms (OB 33–34) fails at the "plain text" step for two more reasons (in addition to the fact that

AB 286 is a permissible prophylactic measure). First, this purported right is not within the Second Amendment's text. The text does not refer to manufacturing. *See* U.S. Const. amend. II. Nor does it refer to items or materials (like unfinished receivers) that could, with further processing, become arms. *See id.* Indeed, Plaintiffs themselves call unfinished receivers and similar items "Non-Firearm Objects," reinforcing that they are not "arms" protected by the Second Amendment. OB 4.

It is true that ancillary rights that are "necessary" to keep and bear arms may be protected, OB 33-34, but there is no allegation in the complaint that self-manufacturing is *necessary* for Plaintiffs to keep and bear arms, ER-251–57, 261–62. Plaintiffs do not allege that they lack access to firearms without self-manufacturing or that self-manufactured firearms have any advantage for self-defense in case of confrontation. *Id.* Federal-government statistics show that serialized firearms are widely available in Nevada without the need for self-manufacturing. FBI, *NICS Firearm Checks: Year by State/Type* 2–3 (2022), https://bit.ly/3z3Ev6T.[9]

---

[9] Plaintiffs cite an out-of-Circuit district-court opinion, *Rigby v. Jennings*, __ F. Supp. 3d. __, 2022 WL 4448220 (D. Del. Sept. 23, 2022), for the proposition that the "right to keep and bear arms implies a corresponding right to manufacture arms" because the "right to keep and bear arms would be meaningless if *no* individual or entity could manufacture a firearm." OB 34 (emphasis added). But the unconstitutional circumstances that *Rigby* describes do not exist in Nevada. AB 286 allows firearms importers and manufacturers to buy and use unfinished frames and receivers, and it allows anyone to self-manufacture firearms as long as they start with a serialized

Second, AB 286 does *not* ban self-manufacturing firearms. *See* Nev. Rev. Stat. § 202.3635(1). AB 286 prohibits manufacturing only *unserialized* firearms (and even then it has exceptions). *Id.* Nevadans are free to self-manufacture firearms, as long as they start from a serialized receivers.

### B. In the Alternative, This Court May Remand This Case so that the Parties Can Develop the Historical Record in the District Court

If this Court does not wish to affirm the judgment below, it can remand without reaching any of the substantive issues presented. *See, e.g.*, *Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119, at *1 (9th Cir. Nov. 17, 2022) (unpublished). But because Plaintiffs devote much of their brief to arguing the substantive issues (OB 2, 35–47), the State will address their incorrect arguments here.

1. There is no basis for Plaintiffs' argument (OB 2) that the State "cannot possibly prevail, and all that remains to be done is for final judgment to be entered in favor of [them]." This case is at the motion to dismiss stage. Even if Plaintiffs' allegations satisfy the Rule 12(b)(6) standard (which the State does not concede), the State is entitled to test them in discovery if this case is remanded. For example, Plaintiffs allege that ghost guns are "in common use for self-defense and other lawful purposes by ordinary law-abiding citizens." ER-260. Plaintiffs must eventually

---

receiver. Nev. Rev. Stat. §§ 202.363(1)(a), 3635(1). And again, serialized firearms, whether made inside or outside of Nevada, are widely available in the State.

prove that allegation with competent evidence before they can seek judgment in their favor. *See Bruen*, 142 S. Ct. at 2143.

By that same token, the State is entitled to present its own historical evidence if this case goes beyond the "plain text" step. *Bruen*, 142 S. Ct. at 2129–30. That evidence will come from primary sources, as well as expert testimony – subject to cross-examination – that will help explain the historical record.

This Court should decline Plaintiffs' invitation (OB 2) to prejudge the outcome upon remand. The district judge is best suited for overseeing the development of the record and applying the law to the historical evidence in the first instance. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985). The *Bruen* "historical tradition" step requires "nuanced judgments about which evidence to consult and how to interpret it." 142 S. Ct. at 2130. That kind of factfinding is part of district judges' everyday work, "and with experience in fulfilling that role comes expertise." *Anderson*, 470 U.S. at 574. It makes sense, then, that this Court has repeatedly remanded Second Amendment cases in *Bruen*'s wake for factual development in the district court, without deciding the legal issues presented.[10]

---

[10] *E.g.*, *McDougall v. County of Ventura*, 38 F.4th 1162 (9th Cir. 2022); *Rhode v. Bonta*, 2022 WL 17099119, at *1; *Miller v. Bonta*, No. 21-55608, 2022 WL 3095986, at *1 (9th Cir. Aug. 1, 2022) (unpublished); *Martinez v. Villanueva*, No. 20-56233, 2022 WL 2452308, at *1 (9th Cir. July 6, 2022) (unpublished); *Rupp v. Bonta*, No. 19-56004, 2022 WL 2382319, at *1 (9th Cir. June 28, 2022) (unpublished).

2. Plaintiffs' substantive arguments are inconsistent with *Bruen* and meritless.

a. Contrary to Plaintiffs' argument (OB 39), if they present evidence in the district court that ghost guns are "in common use" today, that would not render historical evidence "entirely irrelevant." Whether a weapon is in common use is merely one element of the "plain text" step. *Bruen*, 142 S. Ct. at 2134; *Young*, 45 F.4th at 1092–93. If Plaintiffs make it past the "plain text" step, that would lead to the "historical tradition" step, where historical evidence is not irrelevant – it is dispositive. *See Bruen*, 142 S. Ct. at 2126, 2135–36.

b. Plaintiffs also mistakenly argue (OB 38) that courts must ignore the permissible alternatives to ghost guns in Nevada – namely, the vast number of serialized firearms for sale – in assessing their Second Amendment claim. The availability of alternatives is an important consideration in Second Amendment cases, including in a case that Plaintiffs cite for its continuing validity post-*Bruen*. *See, e.g.*, *Teixeira v. County of Alameda*, 873 F.3d 670, 680–81 (9th Cir. 2017) (en banc) (cited on page 33 of the opening brief); *accord Brown*, 2022 WL 17454829, at *9. Consider that a law banning all gun magazines would likely violate the Second Amendment, but a law banning only one type of magazine while leaving others freely available would be constitutional. *Brown*, 2022 WL 17454829, at *9. Plaintiffs analogize their claim to First Amendment claims, OB 38, but courts often

consider permissible alternatives in deciding free speech and free exercise claims too.[11]

Plaintiffs rely (OB 38) on *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3d Cir. 2022), but that case has no bearing here. There, the government had seized a couple's guns pursuant to a warrant and refused to give them back for years even though it had become clear that the guns would not be used as evidence in any criminal prosecution. *Frein*, 47 F.4th at 250–51. The Third Circuit properly concluded that the government cannot keep guns "beyond the scope of a warrant" just because the gun owner could, in theory, buy another gun. *Id.* at 254. That holding has nothing to do with AB 286, which does not involve the State seizing or keeping guns. *See infra* Argument Part II.B.1.

c. Finally, Plaintiffs' discussion of the "historical tradition" step (OB 38–47) is substantively wrong and ignores the historical evidence supporting AB 286. At that step, the State need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133.

---

[11] *See, e.g.*, *One World One Family Now v. City & County. of Honolulu*, 76 F.3d 1009, 1014, 1016 (9th Cir. 1996) (rejecting a First Amendment claim because (among other things) it "le[ft] open ample alternative channels of communication"); *see also New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 603 (9th Cir. 2022) (holding that a zoning code did not impose a substantial burden on religious exercise because the code allowed alternative arrangements), *cert. pet. pending sub nom. City of Salinas v. New Harvest Christian Fellowship*, No. 22-309 (Sept. 30, 2022).

22

If this case is remanded, the State will present evidence of at least two types of historical analogs. First, AB 286 continues the historical tradition of keeping track of the firearms present in the community and the individuals who possess them. *See Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 200 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. The colonies had laws requiring regular "musters" where "officials would inspect and account for guns." *Id.*; Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 509–10 (2004). Similarly, founding-era laws monitored "who in the community had guns." *Nat'l Rifle Ass'n*, 700 F.3d at 200.

Second, AB 286 continues the historical tradition of laws preventing non-law-abiding individuals from obtaining firearms. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring); *Range*, 53 F.4th 274–81 (surveying the relevant history). Federal and Nevada law prohibit certain classes of dangerous individuals from possessing firearms. *E.g.*, 18 U.S.C. § 922(g); Nev. Rev. Stat. § 202.360(1). Background-check laws give force to prohibited-persons laws by preventing prohibited persons from buying firearms from licensees. And AB 286 gives force to background-check laws by preventing an easy end-run around them. *See Judiciary Committee Minutes*, *supra*, at 3.

As discussed above, the State has not had the chance to challenge Plaintiffs' historical references in discovery. But even if we take them at face value, they fail

to undermine the historical support for AB 286. Nearly all of Plaintiffs' sources discuss *professional* gun manufacturers and dealers. OB 40–44; *see, e.g.*, 1 Charles Winthrop Sawyer, *Firearms in American History* 145–47 (1910). That history is consistent with AB 286, which allows professional manufacturing and exempts licensed importers and manufacturers from most of its scope. Nev. Rev. Stat. §§ 202.3625(1)(a), 202.363(1)(a), 202.364(1)(a)(2). Even if some nonprofessionals manufactured firearms in some places at some point in American history, that does not contradict the fact that laws analogous to AB 286 kept track of who possessed which firearms during the founding era.

It makes no difference that laws targeting ghost guns specifically are of a relatively recent vintage. *See* OB 46–47. Ghost guns have become a growing public-safety threat only recently due to "technological advances." Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. at 24,655–56; *see* H.R. Rep. 116-88, at 2 (describing ghost-gun technology as "rapidly evolving"). *Bruen* recognized that when that kind of "dramatic technological change[ ]" triggers new types of regulations, the historical inquiry will be more relaxed than when the regulation "addresses a general societal problem that has persisted since the 18th century." 142 S. Ct. at 2131–32 (majority opinion). The historical analogs identified by the State, which will be developed further in the district court, satisfy the "more

nuanced" approach that *Bruen* asks for in addressing new forms of firearm technology.

## III.  Plaintiffs Cannot State a Takings Claim.

### A.  Plaintiffs Lack Any Constitutional or Statutory Basis for Asserting a Takings Claim Against the State

Plaintiffs' takings claim appears to seek only equitable relief – the complaint's prayer for relief did not seek just compensation or damages. ER-267–69. But because Nevada permits inverse-condemnation actions, equitable relief is not an available remedy for takings claims. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019); *see Fritz v. Washoe County*, 376 P.3d 794, 796 (Nev. 2016) (explaining that Nevada permits inverse-condemnation actions under the federal and Nevada Constitutions). That makes sense: the Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

Plaintiffs could not seek retrospective legal relief against the State even if they had wanted to. Takings plaintiffs "ha[ve] no cause of action directly under the United States Constitution" and must use 42 U.S.C. § 1983. *Golden Gate Hotel Ass'n v. City & County of San Francisco*, 18 F.3d 1482, 1486-87 (9th Cir. 1994) (quoting *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)). And because Plaintiffs sued Defendants in their official capacity, ER-236–37, § 1983 is

not available. Both the statute's text and the Eleventh Amendment bar § 1983 damages claims against State officers sued in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989). The Eleventh Amendment likewise bars any potential attempt to assert a State-law inverse-condemnation claim in federal court. *See Doe v. Regents of the Univ.*, 891 F.3d 1147, 1153 (9th Cir. 2018).

### B.  Plaintiffs Failed to Plead a Per Se Takings Claim

Because there is no constitutional or statutory basis for Plaintiffs' takings claim against the State, there is no need to reach the claim's merits. If this Court chooses to review the merits, however, it should affirm – Plaintiffs' allegations are legally insufficient to sustain their claim.

Plaintiffs attempt to squeeze AB 286 into two categories of per se takings: "physical takings" and deprivations of "all economically beneficial use." OB 48 (brackets omitted). Neither category fits.

1.  To start with, Plaintiffs forfeited any argument that AB 286 effected a physical taking by failing to oppose the motion to dismiss on that ground. ER-27 n.10; *see Cardenas v. United States*, 826 F.3d 1164, 1172 n.6 (9th Cir. 2016). Even if it were not forfeited, it would fail.

A physical taking is, as its name suggests when "the government has physically taken property for itself or someone else." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021). A government's prohibiting certain items is not the

same as a government's taking property for itself or others. *See Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366–67 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021) (holding that a law banning a firearm component was not a physical taking). Plaintiffs were free to move their ghost guns and kits to a jurisdiction where they are legal. *See* OB 46–47 (claiming that only a "handful of states" ban ghost guns). They also could have sold the offending items inside or outside of Nevada during AB 286's grace period. Nev. Rev. Stat. § 202.3645; *see Hamilton v. Ky. Distilleries & Warehouse Co.*, 251 U.S. 146, 158 (1919) (holding that there was no taking when property owners had months to sell their inventory before a ban took effect).

2.    Plaintiffs' argument (OB 48–52) based on *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), fares no better because a *Lucas* claim cannot be based on alleged interference with personal property like ghost-gun kits. *Lucas* held that "regulations that prohibit all economically beneficial use *of land*" constitute compensable takings. 505 U.S. at 1029 (emphasis added). It is not an accident that *Lucas* claims must be based on "land" – "an owner of personal property ought to be aware of the possibility that new regulation might even render his property economically worthless," but "such an implied limitation [is] not reasonable in the case of land." *Horne v. Dep't of Agric.*, 576 U.S. 350, 361 (2015).

Even if *Lucas* permitted a claim based on personal property, the complaint failed to plead a viable *Lucas* claim. That is because it failed to allege that AB 286

deprived Plaintiffs of *all* economically beneficial use of their property. *See* ER-265. It alleged only that Plaintiffs' personal property will "surely not garner [its] fair market value." *Id.* (emphasis omitted). An allegation that their property is worth less is not an allegation that it is worthless, as required by *Lucas*. *Bridge Aina Leʻa, LLC v. Land Use Comm'n*, 950 F.3d 610, 627–28 (9th Cir. 2020).

### C. Any Potential *Penn Central* Argument Was Forfeited and Meritless

In a single paragraph in their opening brief, Plaintiffs argue in the alternative that they stated a claim under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). OB 54–55. The district court found that Plaintiffs had failed to adequately argue that their allegations satisfied the *Penn Central*'s test for a regulatory taking. ER-29. Any argument based on *Penn Central* is therefore forfeited and this Court need not consider it. *See Cardenas*, 826 F.3d at 1172 n.6.

In any event, none of the *Penn Central* factors would support a potential regulatory-taking claim. *See Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (listing the factors). The complaint contains only speculative and vague allegations about the degree of diminution of value of Plaintiffs' property. *See* ER-29, 265; *see also DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 764–65 (9th Cir. 2018) (refusing to take as true the complaint's speculative and conclusory allegations). There is no allegation that any Plaintiff was unable to sell his ghost gun or kit, or even that he tried to. *See id.* at

265. True, the complaint alleges (without concrete factual support) that a sale "will not garner the fair market value." ER-265 (emphasis omitted). But the question is not whether Plaintiffs could recoup fair-market value; it is whether the diminution was so significant that it was "functionally equivalent to the classic taking in which government directly appropriates private property." *Colony Cove*, 888 F.3d at 451 (holding that a 25% diminution was "far too small to establish a regulatory taking").

AB 286 did not interfere with Plaintiffs' investment-backed expectations. Investment-backed expectations must be "objectively reasonable." *Colony Cove*, 888 F.3d at 452. Reasonable expectations account for "the possibility that new regulation might even render [the owner's] property economically worthless." *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1282 (9th Cir. 2021). That goes double when, as here, the personal property at issue was already highly regulated before the government's action. *See Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015).

And AB 286's character does not support concluding that it effected a *Penn Central* taking. AB 286 is a law of general applicability that does not single out particular people "to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *See Bridge Aina Le'a, LLC v. Haw*, 950 F.3d 610, 636 (9th Cir. 2020).

**D.   The State's regulation of dangerous personal property was not a taking**

The district court correctly recognized that even if the complaint had properly pleaded a per se or *Penn Central* taking, the claim would still fail due to the public-safety exception. ER-29–30. The government may "forbid the use of specified private property where such use would be injurious to the public health" without paying compensation (as long as the government doesn't take title to the property). *Sweet v. Rechel*, 159 U.S. 380, 398 (1895) (comma omitted). For that reason, Justice Brandeis, writing for the unanimous Court, concluded that the federal government could ban alcohol without compensation. *Hamilton*, 251 U.S. at 157–58. More recently, federal courts have unanimously found that the ATF's banning bump stocks – a previously legal firearm component – did not require paying compensation. *Guedes v. ATF*, 520 F. Supp. 3d 51, 70 (D.D.C. 2021) (collecting cases), *appeal pending sub nom. Codrea v. Garland*, No. 21-1707 (Fed. Cir. filed Mar. 2, 2021).

Plaintiffs wrongly argue (OB 51) that the public record does not justify applying the public-safety exception here. As the district court found – based on documents subject to judicial notice – the Legislature "adequately demonstrated that unserialized firearms and component parts are properly considered 'dangerous private property.'" ER-30. That conclusion comports with the federal government's findings on ghost guns. *See supra* Statement of the Case Part I.B.

30

There is no basis for Plaintiffs' argument (OB 51) that property must have been "clearly established as a nuisance *before*" the challenged law was enacted. Alcohol was legal before it was banned, yet *Hamilton* concluded that there was no compensable taking. 251 U.S. at 157–58. Bump stocks were legal before recent legal changes, but the courts have likewise found that no compensation is owed for banning them. *Guedes*, 520 F. Supp. 3d at 70.

Plaintiffs' argument that AB 286 is not a "valid law" (OB 50) is equally off base. Plaintiffs' only support for that argument is the contention that AB 286 violates the Second Amendment. *Id.* The State has already explained why AB 286 is constitutional. *See supra* Argument Part I.A.

## CONCLUSION

For the reasons stated above, this Court should affirm the judgment below, or remand the case for further factual development in the district court.

DATED this 6th day of January, 2023.

AARON D. FORD
Attorney General

By: /s/ *Kiel B. Ireland*

Kiel B. Ireland
Deputy Solicitor General

*Attorneys for Defendants-Appellees*
*Joseph M. Lombardo, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** ____22-15645_____

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**___/s/ Kiel B. Ireland_____**Date** _01/06/2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

32

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** ___22-15645_____

I am the attorney or self-represented party.

**This brief contains 7,431 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
    Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___/s/ Kiel B. Ireland_____ **Date** _01/06/2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

33

# STATUTORY ADDENDUM - TABLE OF CONTENTS

**Page**

Fifth Amendment to the U.S. Constitution .................................................35

42. U.S.C. §1983 .................................................................................35

Nev. Rev. Stat. § 202.253(9) ...............................................................35

Nev. Rev. Stat. § 202.3625(1) .............................................................35

Nev. Rev. Stat. § 202.3625(1)(a)(1)-(2) ...............................................36

Nev. Rev. Stat. § 202.3625(1)(b) .........................................................36

Nev. Rev. Stat. § 202.3625(2)(a)-(b) ....................................................36

Nev. Rev. Stat. § 202.363(1)(a)-(b) ......................................................36

Nev. Rev. Stat. § 202.363(2)(a)-(b) ......................................................36

Nev. Rev. Stat. § 202.3635(1) .............................................................36

Nev. Rev. Stat. § 202.3635(1)(a)-(c) ....................................................37

Nev. Rev. Stat. § 202.3635(2)(a)-(b) ....................................................37

Nev. Rev. Stat. § 202.3635(3)(a)-(b) ....................................................37

Nev. Rev. Stat. § 202.364(1)(a)(1)-(2) ..................................................37

Nev. Rev. Stat. § 202.364(1)(b)(1)-(4) ..................................................37

Nev. Rev. Stat. § 202.364(2)(a)-(b) ......................................................38

Nev. Rev. Stat. § 202.364(3) ...............................................................38

Nev. Rev. Stat. § 202.3645 .................................................................38

# STATUTORY ADDENDUM

Except for the following, all applicable statutes, etc., are contained in the opening brief.

## Fifth Amendment to the U.S. Constitution:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## Nev. Rev. Stat. § 202.253(9)

"Unfinished frame or receiver" means a blank, a casting or a machined body that is intended to be turned into the frame or lower receiver of a firearm with additional machining and which has been formed or machined to the point at which most of the major machining operations have been completed to turn the blank, casting or machined body into a frame or lower receiver of a firearm even if the fire-control cavity area of the blank, casting or machined body is still completely solid and unmachined.

## Nev. Rev. Stat. § 202.3625

1. A person shall not sell, offer to sell or transfer an unfinished frame or receiver unless:

35

(a) The person is:

    (1) A firearms importer or manufacturer; and

    (2) The recipient of the unfinished frame or receiver is a firearms importer or manufacturer; or

(b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by an importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.

2. A person who violates this section:

(a) For the first offense, is guilty of a gross misdemeanor; and

(b) For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

## Nev. Rev. Stat. § 202.363

1. A person shall not possess, purchase, transport or receive an unfinished frame or receiver unless:

(a) The person is a firearms importer or manufacturer; or

(b) The unfinished frame or receiver is required by federal law to be imprinted with a serial number issued by a firearms importer or manufacturer and the unfinished frame or receiver has been imprinted with the serial number.

2. A person who violates this section:

(a) For the first offense, is guilty of a gross misdemeanor; and

(b) For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

## Nev. Rev. Stat. § 202.3635

1. A person shall not manufacture or cause to be manufactured or assemble or cause to be assembled a firearm that is not imprinted with a serial number issued by a firearms importer or manufacturer in accordance with federal law and any regulations adopted thereunder unless the firearm:

(a)     Has been rendered permanently inoperable;

(b)     Is an antique firearm; or

(c)     Has been determined to be a collector's item pursuant to 26 U.S.C. Chapter 53 or a curio or relic pursuant to 18 U.S.C. Chapter 44.

2.     A person who violates this section:

(a)     For the first offense, is guilty of a gross misdemeanor; and

(b)     For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

3.     As used in this section:

(a)     "Assemble" means to fit together component parts.

(b)     "Manufacture" means to fabricate, make, form, produce or construct by manual labor or machinery.

## Nev. Rev. Stat. § 202.364

1.     A person shall not possess, sell, offer to sell, transfer, purchase, transport or receive a firearm that is not imprinted with a serial number issued by a firearms importer or manufacturer in accordance with federal law and any regulations adopted thereunder unless:

(a)     The person is:

(1)     A law enforcement agency; or

(2)     A firearms importer or manufacturer; or

(b)     The firearm:

(1)     Has been rendered permanently inoperable;

(2)     Was manufactured before 1969;

(3)     Is an antique firearm; or

(4)     Has been determined to be a collector's item pursuant to 26 U.S.C. Chapter 53 or a curio or relic pursuant to 18 U.S.C. Chapter 44.

2.   A person who violates this section:

   (a)   For the first offense, is guilty of a gross misdemeanor; and

   (b)   For the second or any subsequent offense, is guilty of a category D felony and shall be punished as provided in NRS 193.130.

3.   As used in this section, "law enforcement agency" has the meaning ascribed to it in NRS 239C.065.

## Nev. Rev. Stat. § 202.3645

Nothing in the provisions of NRS 202.3625 to 202.364, inclusive, shall be deemed to prohibit the sale of an unfinished frame or receiver or firearm that is not imprinted with a serial number to a firearms importer or manufacturer or a licensed dealer before January 1, 2022. As used in this section, "licensed dealer" has the meaning ascribed to it in NRS 202.2546.